# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

WANDA BUSBY,

      Plaintiff,

      v.

CAPITAL ONE, N.A., *et al*.

      Defendants.

Civil Action No. 11-01172 (CKK)

## MEMORANDUM OPINION
(March 25, 2013)

Plaintiff Wanda Busby ("Busby"), proceeding *pro se*, brings the above-captioned action against Defendants Capital One, N.A. ("Capital One"), David N. Prensky, Esq. ("Prensky"), and Ida Williams, in her official capacity as the District of Columbia Recorder of Deeds[1] ("Recorder"), asserting various causes of action in connection with a promissory note and deed of trust executed by Busby in 1996. Before the court is Busby's [26] Motion for an Order Remanding this Case to the D.C. Superior Court. Also before the Court is Capital One's [19] Motion to Dismiss, which requests the Court to dismiss, with prejudice, all claims against Capital One pursuant to Federal Rule of Civil Procedure 12(b)(6). Both motions are fully briefed and ripe for the Court's consideration. Upon careful review of the parties' submissions,[2] the

---

[1] Busby sued former District of Columbia Recorder of Deeds, Larry Todd, in is official capacity. Upon her appointment to the position of District of Columbia Recorder of Deeds, Ida Williams was automatically substituted as the defendant of record. *See* FED. R. CIV. P. 25(d).

[2] Notice of Removal, ECF No. [1]; Pl.'s Am. Compl., ECF [6-1], at 22-60; Pl.'s Mot. for an Order Remanding this Case to the District of Columbia Superior Court & Mem. of P. & A. in Supp. of Pl.'s Mot. to Remand ("Pl.'s Mem."), ECF No. [26]; Capital One, N.A.'s Opp'n to Pl.'s Mot. to Remand ("Capital One's Opp'n"), ECF No. [27]; Pl.'s Reply to Capital One, N.A.'s Opp'n to Pl.'s Mot. to Remand ("Pl.'s Reply"), ECF No. [32]; Def. Capital One's Mot. to

relevant authorities, and the entire record, and for the foregoing reasons, the Court shall DENY Busby's Motion to Remand Case and GRANT-IN-PART and DENY-IN-PART Capital One's Motion to Dismiss.

Specifically, the Court shall dismiss the following claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6): fraud and intentional misrepresentation (Count II); conspiracy to commit fraud (Count III); wrongful attempted foreclosure (Count IV); violation of the District of Columbia Interest Rate Ceiling Amendment Act ("D.C. Usury Statute"), D.C. Code § 28-3312, and the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3904 (Count V); civil conspiracy (Count VII); negligence (Count VIII); unconscionability, bad faith, and unfair dealing (Count IX); and emotional distress (Count X). Because the pleading deficiencies discussed below afflict the claims insofar as they are asserted against both Capital One and Prensky, who has not yet been served in this action, the Court shall dismiss these claims in their entirety. *See Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) (observing that *sua sponte* dismissal pursuant to Rule 12(b)(6) is appropriate when it is patently obvious that the plaintiff cannot prevail based on the facts alleged in the complaint). Further, because Busby was previously warned about these deficiencies in connection with prior litigation and has not here requested leave to amend, the Court shall dismiss these claims with prejudice.

However, because the Court concludes that Busby has adequately – albeit barely – pled conversion (Count VI), the Court shall deny Capital One's motion's insofar as it seeks dismissal

---

Dismiss & Stmt. of P. & A. in Supp. of Capital One's Mot. to Dismiss ("Capital One's Mem."), ECF No. [19]; Pl.'s Mem. of P. & A. in Supp. of Pl.'s Opp'n to Capital One's Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. [28]; Reply Mem. in Supp. of Mot. to Dismiss Pl.'s Amended Compl. ("Capital One's Reply"), ECF No. [33]. In exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. *See* LCvR 7(f).

of that claim.  Accordingly, the only remaining claims in this action include conversion (Count VI), and claims asserted against the other two defendants: Busby's request for declaratory and injunctive relief against the Recorder (Count I) and a breach of fiduciary duty claim against Prensky (Count XI).

## I.  BACKGROUND

### A.  Factual Background

As alleged in Busby's Amended Complaint, on December 20, 1996, Busby purchased real property located in Northwest Washington, D.C., which she financed with a $207,000 loan from the B.F. Saul Mortgage Company ("B.F. Saul").  Am. Compl. ¶ 30; *id*. Ex. B (Deed of Trust).  The loan was documented by a promissory note (the "Note"), *id*.; Capital One's Mem., Ex. A (Note),[3] and secured by a deed of trust (the "Deed of Trust"), which was filed with the Recorder on December 24, 1996.  Am. Compl. ¶ 30 & Ex. B (Deed of Trust).

According to Busby, there exists no recorded transfer of the Deed of Trust from B.F. Saul to any other entity.  *Id*. ¶ 42.  While Busby alleges that Capital One "collected payments from" her (without specifying when this alleged collection of payments began), *see id*. ¶ 63, she also alleges, upon information and belief, that Capital One is not the lender or note holder, has never been the lender or note holder, does not have physical possession of the note, and has not been authorized to collect payments by any entity having authority to provide such authorization under the terms of the Deed of Trust.  *See id*. ¶¶ 45-81.  Further, Busby alleges that as early as

---

[3] The Court may consider the Note, which was attached as Exhibit A to Capital One's motion in ruling on Capital One's Motion to Dismiss.  *See Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) ("Matters that are not 'outside' the pleadings that a court may consider on a motion to dismiss include the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.") (internal citations and quotation marks omitted).

September 2009, Capital One represented to Busby that it was the lender, even though it was not the lender. *Id.* ¶ 66. Busby alleges that sometime in early April 2010, during a conversation with Capital One, she discovered that Capital One had "misapplied" payments that she had made. *Id.* ¶ 68. Specifically, she alleges that Capital One told her that as early as September 2009, Capital One had been allocating Busby's payments to her escrow account to cover "exorbitant" and "unauthorized" insurance charges, instead of to the principal and interest. *Id.* ¶¶ 69-71, 78. She alleges that Capital One also told her that despite that allocation, there remained a sizeable underpayment of her escrow account. *Id.* ¶ 73. Busby contends that she communicated that the amounts were mistaken and that, during the time she was attempting to resolve the errors (and unbeknownst to her), Capital One "fraudulently and without authority to do so, took actions to invoke the power of sale provisions under the [Deed of Trust]." *Id.* ¶¶ 74-80.

On April 12, 2010, Busby was issued a notice of foreclosure sale ("Notice of Foreclosure Sale"), advising her that she owed $168,842.38 on the Note as of that date and that her property would be sold at a foreclosure sale on May 19, 2010, *see id.* ¶ 94 & Ex. D (Notice of Foreclosure Sale). The Notice of Foreclosure identifies Capital One as the holder of the Note. *Id.* ¶ 96 & Ex. D (Notice of Foreclosure Sale). The Notice of Foreclosure also indicated that if Busby wanted to stop the foreclosure sale, she should contact Defendant Prensky, who had purportedly been appointed as trustee pursuant to a deed of appointment of substituted trustee ("Deed of Appointment"), dated December 1, 2009. *Id.* ¶ 159; *id.*, Ex. D (Notice of Foreclosure Sale); *id.*, Ex. C (Deed of Appointment). Both the Notice of Foreclosure Sale and the Deed of Appointment were filed with the Recorder on April 14, 2010. *Id.* ¶ 94.

Busby alleges that both the Notice of Foreclosure Sale and the Deed of Appointment are fraudulent documents.  *See* Am. Compl. ¶¶ 94-193.  Specifically, she alleges, relying upon the statutory five year term of expiration for notaries under District of Columbia law, that the Deed of Appointment was backdated and was executed by officers of Chevy Chase Bank (with whom Capital One later merged) at a time when Chevy Chase Bank was no longer in existence.  Am. Compl.  *See id*. ¶ 132.  Further, Busby contends that, because at the time of execution of the Deed of Appointment, neither Chevy Chase Bank nor Capital One were the lender or otherwise had authority to substitute a trustee, Prensky is not the true trustee.  *Id.* ¶154.

Regarding the Notice of Foreclosure Sale, Busby alleges it is fraudulent because the amounts due and owing by Busby stated therein are overstated and not owed, *see id*. ¶ 171, and also because it represents that Capital One is the Note holder, but Capital One is not, and never was, the Note holder.  *See id*. ¶ 45-81, 135, 155.  Busby contends that she at first believed the information in the Notice of Foreclosure Sale because Capital One had previously represented to her over several months that it was the lender.  *Id*. ¶ 158.  However, on May 12, 2010, Busby allegedly telephoned Prensky to request postponement of the scheduled sale date of the property.  *Id*. ¶ 159.  Busby further alleges that Prensky referred her to a representative at Capital One, who indicated that Capital One was not the holder of the note (but rather, that Fannie Mae was), and Capital One therefore could not authorize postponement of the foreclosure sale.  *Id*. ¶¶ 160-64.  However, Busby also alleges that on May 18, 2010, after Busby commenced litigation against Capital One and Prensky, Prensky telephoned Busby to inform her that the Capital One representative with whom Busby had spoken was incorrect when she represented that Capital One was not the Note Holder and also that Capital One had cancelled the foreclosure sale scheduled for May 19, 2010.  *Id*. ¶ 173.  Subsequently, from June 2010 to August 2010, Busby

avers that she repeatedly requested, both verbally and in writing, that Capital One's counsel provide her with documentation showing that it had the right to enforce the Note, but that Capital One has been "unable to provide such evidence." *See id.* ¶¶ 81, 184-192.

## B. Procedural Background

### 1. *Busby I* (Civil Action No. 10-1025)

On May 18, 2010, Busby commenced an action against Defendants Capital One and Prensky in the Superior Court of the District of Columbia (hereinafter "*Busby I*"). *See Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 273 (D.D.C. 2011). After being served with the complaint, Prensky informed Busby that Capital One had agreed to cancel the foreclosure sale, which had been scheduled for May 19, 2010, but left open the possibility that the sale would be rescheduled for a later date. *Id.* (citing Original Action Am. Compl. ¶¶ 95-96). Busby filed an amended complaint in the Superior Court on June 9, 2010, and Capital One and Prensky removed the action to this District on June 17, 2010. *Id.* at 273-74. Judge Ricardo M. Urbina presided over the action and described Busby's ten-count amended complaint as follows:

> "[T]he plaintiff alleges that the Notice [of Foreclosure] was fraudulent and ineffective because it misrepresented Capital One as the holder of the note, when, in reality, Capital One was acting, at best, as the loan servicer. . . . The plaintiff also alleges that in the Notice, the defendants misrepresented the amounts owed by the plaintiff. In addition, the plaintiff claims that the Deed of Appointment is fraudulent and ineffective. The plaintiff asserts that there are errors in the notarization on the form, and that although the Deed of Appointment was executed by an individual on behalf of Chevy Chase[,] … Chevy Chase had merged with Capital One four months earlier and therefore did not exist as of the date the Deed of Appointment was executed."

*Id.* at 273 (citing Original Action Am. Compl.). The complaint asserted a litany of statutory and common law claims – specifically: fraud; breach of fiduciary duty; violations of the D.C. Interest Rate Ceiling Amendment Act ("D.C. Usury Statute"), D.C. Code § 28-3312, and the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3904; conversion; violations of

the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*;

negligence; unconscionability; bad faith and unfair dealing; and emotional distress. *Id.* at 273-

274.  Aside from the breach of fiduciary duty claim, which was asserted only against Prensky,

and the D.C. Usury Statute claim, which was asserted only against Capital One, each claim was

asserted against both Prensky and Capital One.  *Id.*

Capital One and Prensky separately filed motions to dismiss for failure to state a claim

under Fed. R. Civ. P. 12(b)(6). *Id.* at 274. Capital One sought the dismissal of all claims asserted

against it; Prensky moved to dismiss all but one of the claims against him. *Id.* On March 28,

2011, Judge Urbina granted both motions. Specifically, the Court found that "nearly all of the

plaintiff's claims, as set forth in the amended complaint, are seriously flawed and insufficient to

withstand the defendants' motions to dismiss." *Id.* at 286.  Accordingly, Judge Urbina dismissed

all of Busby's claims, with the exception of her breach of fiduciary duty claim against Prensky,

which Prensky did not move to dismiss. This dismissal was without prejudice because, as the

Court reasoned, although Busby's complaint was "woefully inadequate," it was not entirely clear

at that stage in the litigation that Busby could not remedy the deficiencies in her pleading with

additional factual allegations. *Id*. at 286-87.

On April 8, 2011, Busby filed an appeal of the Court's decision in *Busby I*, which the

Circuit Court summarily rejected as premature in view of the fact that claims against Prensky

remained live before the District Court. *See generally Busby v. Capital One, N.A.*, Case No. 11-

7035, Order (D.C. Cir. Sept. 19, 2011). In September 2011, Busby filed a motion for remand or,

in the alternative, for voluntary dismissal of her claims without prejudice, which the Court

denied in part and granted in part. *See Busby v. Capital One, N.A.*, Civ. A. No. 10-1025, ECF

No. [59].  Specifically, the Court declined to remand the action, finding that it possessed subject

matter jurisdiction over Busby's remaining claim against Prensky; however, because the Court found that neither Capital One nor Prensky would suffer prejudice by voluntary dismissal, it granted Busby's motion to voluntarily dismiss her remaining claim without prejudice.  *Id.*

Because Judge Urbina dismissed all of Busby's claims without prejudice, she is not precluded from bringing those same claims again in this action.  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990) ("Dismissal without prejudice is a dismissal that does not operate as an adjudication upon the merits, and thus does not have a res judicata effect.") (citation and internal marks omitted).

### 2. The Current Action

On April 7, 2011, ten days after Judge Urbina issued his dismissal order in *Busby I* (and one day before Busby appealed that order), Busby filed the instant action in the District of Columbia Superior Court against Capital One, Prensky, and the Recorder. *See* Original File, ECF No. [6]. The claims asserted in Busby's Amended Complaint, all of which are based upon the same documents and events at issue in *Busby I*, bear unsurprisingly striking similarity to those advanced in *Busby I* (and are indeed in large part reasserted verbatim).  While Busby has, in some instances, supplemented her claims with additional factual allegations, as well as added several conclusory legal assertions, the crux of Busby's challenge remains the same: that Capital One lacked authority to commence foreclosure on her property, that Capital One made fraudulent misrepresentations regarding its authority to foreclose and the amounts owed by Busby, and that the Deed of Appointment appointing Prensky as trustee was also fraudulent because it was made by two representatives of Chevy Chase Bank after it merged with Capital One.  *See generally* Am. Compl.  One notable difference, however, is Busby's having added as defendant the Recorder, against whom she seeks declaratory and injunctive relief – essentially, an order

directing the Recorder to strike the Notice of Foreclosure Sale and Deed of Appointment from the District's publicly available land records. *See id.* ¶¶ 202-207.

On June 22, 2011, Capital One removed this matter to federal court on the basis of diversity of citizenship jurisdiction, *see* Notice of Removal, and the case was assigned to Judge Urbina, as an action related to *Busby I*. Capital One then moved to dismiss, or, in the alternative, to stay the case pending Busby's appeal of *Busby I*, *see* ECF No. [4]. On July 20, 2011, Judge Urbina stayed the action pending the appeal. *See* Min. Order (July 7, 2011). Subsequent to the D.C. Circuit's dismissal of the *Busby I* appeal, and Busby's voluntary dismissal of the remaining claim against Prensky in *Busby I*, *see supra* Part I.B.1, the undersigned, whom inherited the instant action upon Judge Urbina's retirement, lifted the stay and set a schedule for the briefing of pre-discovery dispositive motions. *See* Order (May 2, 2012). Busby subsequently moved to remand this matter back to Superior Court*, see* Pl.'s Mem., and Capital One moved to dismiss*, see* Capital One's Mem.

Capital One's motion to dismiss is the only dispositive motion before this Court, as the Recorder filed an Answer in Superior Court on June 30, 2011, *see* Original File, ECF No. [6-1], at 4, and Prensky has not yet been served with process. Both Busby's motion to remand and Capital One's motion to dismiss have been fully briefed and are ripe for this Court's consideration. Busby's motion to remand for lack of subject matter jurisdiction necessarily precedes Capital One's motion to dismiss for failure to state a claim; accordingly, the Court shall address the remand motion first.

## II. DISCUSSION

**A. Motion to Remand**

A defendant has the right to remove to federal court an action brought in state court where the federal court has original subject matter jurisdiction, including on the basis of diversity of citizenship. 28 U.S.C. § 1441(a).   Diversity jurisdiction exists when the action involves citizens of different states, and the amount in controversy exceeds $75,000.00 per plaintiff, exclusive of interest and costs.   28 U.S.C. § 1332(a).   When the plaintiff makes a motion to remand on the basis of a lack of subject matter jurisdiction, the defendant bears the burden of establishing that federal subject matter jurisdiction exists.   *Wexler v. United Air Lines*, 496 F. Supp. 2d 150, 152 (D.D.C. 2007).   Courts must strictly construe removal statutes, resolving any ambiguities regarding the existence of removal jurisdiction in favor of remand. *Id*, *see also Williams v. Howard Univ.*, 984 F. Supp. 27, 29 (D.D.C. 1997) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941)).   If the removal court determines at any time prior to final judgment that it lacks subject matter jurisdiction, remand of the case back to the state court is mandatory.   28 U.S.C. § 1447(c); *Republic of Venezuela v. Philip Morris, Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002).   A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made by the plaintiff within thirty days after the filing of the notice of removal.   28 U.S.C. § 1447(c).

Here, Busby makes two arguments in support of her motion to remand to the District of Columbia Superior Court.   First, Busby argues that Capital One's removal was procedurally defective because it was untimely and because Capital One failed to obtain the Recorder's consent to removal.   Second, Busby argues that this Court does not possess subject matter jurisdiction over this case.   For the below reasons, the Court finds both arguments without merit.

**1. Capital One's Notice of Removal was procedurally proper.**

Defendants intending to remove actions to federal court must file a notice of removal within thirty days after the defendant receives the complaint – either by service or otherwise. 28 U.S.C. § 1446(b)(1). Further, for removal to be proper, in cases with multiple defendants, each defendant must consent to removal. *Chi. Rock Island & Pac. Ry. Co. v. Martin*, 178 U.S. 245, 247-48 (1900); *Williams v. Howard Univ.*, 984 F. Supp. 27, 30 (D.D.C. 1997). Three well-established exceptions exist to this rule of unanimity: 1) where one or more defendants has not been served with the initial pleading at the time the removal petition was filed; 2) where a defendant is merely a nominal or formal party-defendant; or 3) where the removed claim is separate and independent claim under 28 U.S.C. § 1441(c). *Williams*, 984 F. Supp. at 30 n.5.

In this case, Busby argues first that Capital One failed to remove this action within thirty days of the date on which she served Capital One. Pl.'s Mem. at 4-5. Capital One counters that it was never properly served in this action, but, in any event, filed its notice of removal twenty days after receiving the Amended Complaint.[4] Capital One's Opp'n at 10-12. Second, Busby argues that, even if Capital One's removal was timely, it was nonetheless procedurally improper because Capital One failed to obtain the consent of the Recorder. Pl.'s Mem. at 5, 11-12. Capital One contends that the consent of the Recorder was unnecessary because she is a nominal party. Capital One's Opp'n at 18-19, n.14.

Preliminarily, the Court observes that Busby first moved to remand this action on July 25, 2011 – thirty-three days after Capital One filed its Notice of Removal. *See* Notice of Removal;

---

[4] The Court observes that, although Capital One is free to argue that it was never properly served for purposes of rebutting Busby's remand motion, because Capital One has not included insufficiency of service of process as one of the grounds in its pre-answer motion to dismiss, Capital One has waived any argument that the Court should dismiss this action due to insufficient service of process. *See* FED. R. CIV. P. 12(h)(1).

Mot. to Remand, ECF No. [8].  Further, once the Court lifted the stay of this action, effective May 15, 2012, Busby waited an additional forty-one days to refile her motion to remand.  *See* Order (May 2, 2012), ECF No. [14]; Pl.'s Mem.  This given, Busby's motion to remand, insofar as it asserts a procedural challenge, is itself untimely and should be rejected as waived on that basis alone.  *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."); *see also Cades v. H&R Block*, 43 F.3d 869, 873 (4th Cir. 1994) ("An untimely removal is a defect in removal procedure.").  In any event, even if Busby had timely asserted her two procedural objections to Capital One's removal, the Court would find both of those objections unavailing for the below reasons.

First, Busby has failed to provide proof of proper service on Capital One, or to disprove Capital One's assertion that it did not receive the Amended Complaint until twenty days prior to its filing of the Notice of Removal.  When challenged, the burden lies with the plaintiff to prove proper service.  *Light v. Wolf,* 816 F.2d 746, 751 (D.C. Cir. 1987); *Hilksa v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003). District of Columbia Superior Court Rule of Civil Procedure 4(c) requires that service be effected by "any person *who is not a party* and who is at least 18 years of age." D.C. Supp. Ct. R. Civ. P. 4(c)(2) (emphasis added).  District of Columbia Superior Court Rule of Civil Procedure 4(h) allows a corporation to be served by "by delivering a copy of the summons, complaint and initial order to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."  D.C. Supp. Ct. R. Civ. P. 4(h)(1).

Busby has failed to prove proper service on Capital One.  While Busby broadly asserts that, on April 25, 2011, she mailed a copy of the summons, complaint, and Amended Complaint "to Capital One," *see* Pl.'s Mem. at 4; Original File, ECF No. [6-1], at 21, she made the mailing herself, in contravention of Rule 4(c)(2).  More fatally, Busby has failed to provide the requisite proof that Capital One in fact received the mail, such as a signed return receipt, *see*  D.C. Supp. Ct. R. Civ. P. 4(l), or a return envelope, *see* D.C. Supp. Ct. R. Civ. P. 4(c)(4).[5]  While Busby also avers that on April 28, 2011, she served the summons, complaint, and Amended Complaint on the D.C. Superintendent of Corporations, Department of Consumer and Regulatory Affairs ("DCRA"), *see* Pl.'s Mem. at 2; Original File, ECF No. [6-1], at 21, this alleged service was likewise improper.  First, as aforementioned, Busby cannot effect service herself as she did.  Second, DCRA is not the statutory agent of Capital One.  To be sure, for corporations who are registered to do business in the District of Columbia, service may be effected by serving the Mayor or his designee, the DCRA. *See* D.C. Code § 29-104.12(b).  Here, however, Busby has specifically – and correctly – alleged that Capital One is a foreign corporation not registered to do business in the District of Columbia.  Am. Compl. ¶ 10; *see also* Capital One's Opp'n at 11 n.10 (noting that Capital One does not need to register to do business in the District of Columbia because it is a national bank) (citing *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11-14 (2007)).  Accordingly, because the DCRA is not Capital One's authorized agent for purposes of accepting service, Busby's attempt to serve Capital One by serving the DCRA was not proper.[6]

---

[5] Indeed, as Capital One points out in its brief, Busby's only certificate of mailing is directed to a P.O. Box at the D.C. Department of Consumer and Regulatory Affairs.  *See* Original File, ECF No. [6-1] at 15.

[6] In her reply brief, Busby asserts that she was instructed by the D.C. Superior Court to serve Capital One by mailing the summons, order, and complaint on Capital One through the DCRA. *See* Pl.'s Reply at 4. Busby provides no evidence to support this assertion, but, in any event, the fact remains that regardless of the instructions Busby may or may not have received, service was

Capital One contends that although it never received any copy of the summons, complaint, and Amended Complaint directly from Busby, the DCRA did ultimately forward to it a copy of the complaint and Amended Complaint.  *See* Notice of Removal at ¶14.  Capital One represents that it received the copy of the complaint and Amended Complaint from the DCRA on June 2, 2011.  *Id.* [7]  Capital One removed the action twenty days later, on June 22, 2011 – within the thirty-day period prescribed by 28 U.S.C. § 1446(b).  Therefore, Capital One timely removed this action to federal court.

The Court also finds unavailing Busby's argument that Capital One failed to obtain the requisite consents to removal.  As aforementioned, in multi-defendant cases, each defendant must consent to removal *except* where 1) one or more defendants has not been served with the initial pleading at the time the removal petition was filed; 2) a defendant is merely a nominal or formal party-defendant; or 3) the removed claim is separate and independent claim under 28 U.S.C. § 1441(c).  *Williams*, 984 F. Supp. at 30 n.5.  Here, as Busby herself acknowledges, Prensky has not yet been served in this action.  *See* Pl.'s Mem. at 2.  Therefore, Prensky's consent to removal was not required.  *See Williams*, 984 F. Supp. at 30 n.5.  While Busby argues that Capital One failed to obtain the Recorder's consent prior to removal, *see* Pl.'s Mem. at 11-12, the Court agrees with Capital One that the Recorder's consent to removal was unnecessary because, as explained in further detail *infra* Part II.A.2, the Recorder is merely a nominal party to this action.  *Williams*, 984 F. Supp. at 30 n.5.

---

not properly made on Capital One in accordance with the District of Columbia Superior Court Rules of Civil Procedure.

[7] Although Busby argues that Capital One has provided no evidence that it received the documents on June 2, 2011, the Court notes that counsel has a duty to make truthful representations to the Court, and therefore relies on Capital One's assertions. *See* Fed. R. Civ. P. 11(b).

2. **The Court has subject matter jurisdiction over this action.**

A district court has original subject matter jurisdiction where the parties at interest are citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Here, Busby argues that because this action satisfies neither the diversity of citizenship requirement nor the amount in controversy threshold, the Court must remand to the District of Columbia Superior Court. The Court disagrees. Because here, the Court finds that the real parties in interest are diverse and the amount in controversy exceeds $75,000, the Court finds that it possesses subject matter jurisdiction over this action under 28 U.S.C. § 1332, and Busby's motion to remand must therefore be denied.

a. **Diversity of citizenship exists in this case.**

Where the district court's jurisdiction is dependent solely on the basis of diversity of citizenship between the parties, there must be "complete diversity," meaning that no plaintiff may have the same citizenship as any defendant. *See, e.g., Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978). Here, there is no dispute that Busby is a resident and citizen of the District of Columbia, and that Capital One and Prensky are citizens of Virginia. *See* Notice of Removal at ¶¶15-16, 18, 23; *see also* Capital One's Opp'n at 13 & n.11. While Busby argues that this Court does not have subject matter jurisdiction over this case because the Recorder, a District of Columbia citizen, shares Busby's citizenship, Mot. to Remand at 12, the Court agrees with Capital One that because the Recorder is merely a nominal party to this lawsuit, the Court must disregard her citizenship in making its jurisdictional determination.[8]

---

[8] Capital One also argues that the Court should disregard the Recorder's citizenship because Busby fraudulently joined the Recorder for the sole purpose of defeating diversity jurisdiction, despite the complete absence of a viable cause of action against the Recorder in this case. *See*

"A federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). Parties are not "real" when they are joined "only as the designated performer of a ministerial act," or have no "control of, impact on, or stake in the controversy." *Cf. Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 92 (2005) (the court, citing cases, described these factors to find that a party was a real party because it did not fall into any of the named categories). This rule attempts to bar state court plaintiffs from doing exactly what Capital One contends Busby tried to do here – preventing the real defendants from exercising their statutory removal right. *See Lloyd v. Travelers Prop. Cas. Ins. Co.*, 699 F. Supp. 2d 812, 816 (E.D. Va. 2010).

Upon a scrutinizing review of Busby's 395-paragraph complaint, the Court can identify only two substantive references to the Recorder. First, Busby claims that the Recorder accepted the allegedly fraudulent Notice of Foreclosure Sale and Deed of Appointment for recording in the District of Columbia land records. Am. Compl. ¶ 94. Second, Busby prays in Count I for "declaratory relief" against the Recorder – which is, in substance, a request for an injunction ordering the Recorder to strike the allegedly fraudulent documents from the District's publicly available land records. Am Compl. ¶¶ 202-07. Other references to the Recorder are in passing or as background, *see, e.g.,* Am. Compl. ¶¶ 15, 20, 30, 41, and, tellingly, appear to present the

---

Defs' Opp'n at 14. Courts in this Circuit have set a high bar for fraudulent joinder, as the defendant "must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." *Brown v. Brown & Williamson Tobacco Corp.*, 26 F. Supp. 2d 74, 76-77 (D.D.C. 1998) (citations omitted). The Court harbors serious concern that Busby's naming of the Recorder as a defendant in this action – by way of a single count for declaratory and injunctive relief relating to the Recorder's purely ministerial functions in connection with the receipt of the mortgage documents at issue here – amounts to no more than jurisdictional trickery. Nevertheless, in view of the demanding showing required to prove fraudulent joinder, and the fact that the Court concludes for reasons stated *infra* that the D.C. Recorder is indubitably none other than a nominal party, the Court need not reach Capital One's fraudulent joinder argument.

Recorder as a fellow victim of Capital One's alleged fraud and deception, *see* Am. Compl. ¶¶ 132, 140, 223, 245, 279, 305, 311, 312, 329, 347(i), 371.  Also indicative of the Recorder's nominal role in this action the very first paragraph of the Amended Complaint, which reads, in pertinent part:  "Although the D.C. Recorder is a defendant in this action, when this term is capitalized and plural ('Defendants'), it refers only to Prensky and Capital One, and not to the D.C. Recorder of Deeds." Am. Compl. ¶ 1.

As is clear from the Complaint, Busby takes issue with the Recorder only insofar as she, in her official capacity as collector and recorder of the District's land records, received and recorded from third parties what Busby now alleges to have been fraudulent documents.  Put differently, Busby has named the Recorder "only as the designated performer of a ministerial act," and has failed entirely to point to any "control of, impact on, or stake in the controversy" maintained by the Recorder.  *Lincoln Prop. Co.*, 546 U.S. at 92.  While Busby relies on *Mayers v. Ridley*, 465 F.2d 630 (D.C. Cir. 1972), to argue that the Recorder is not merely a performer of a ministerial act, but has discretion to reject certain documents, such reliance is misplaced.  *See* Pl.'s Mem. at 9-11.  In *Mayers*, the Court of Appeals held that the Fair Housing Act of 1968, 42 U.S.C. § 3604(c), which makes it unlawful to publish any notice regarding the sale of a dwelling that indicates any preference based on race, prohibits the District of Columbia Recorder of Deeds from accepting for filing instruments which contain racially restrictive covenants.  *Id*.  Unlike Busby, the *Mayers* plaintiffs – District of Columbia homeowners whose deeds contained racially restrictive covenants – brought a class action suit seeking injunctive relief based on the Constitution and federal civil rights statutes, on their own behalf and on behalf of all District of Columbia homeowners similarly situated, against *only* the Recorder of Deeds and the Commissioner of the District of Columbia for the District's own violation of the Fair Housing

Act.  465 F.2d 630.  The crux of Busby's suit, by contrast, is not a challenge to an allegedly illegal policy or practices of the District of Columbia government, but rather a direct challenge to the authenticity of the Notice of Foreclosure Sale and Deed of Appointment allegedly fraudulently created by Capital One and Prensky.  The Recorder's role in this case was none other than ministerial.

Finally, as Capital One astutely observes, the peripheral nature of Busby's claims against the Recorder is further evident from the fact that the Amended Complaint nowhere alleges that Busby has ever even spoken with anyone at the office of the Recorder, *see generally* Am. Compl., as well as the fact that the Recorder himself has filed an Answer denying all knowledge of any fact in this case, *see* Original File, ECF No. [6-1], at 4-9.

For all of the foregoing reasons, the Court finds that the Recorder is a nominal party whose citizenship shall not be considered for diversity purposes.  Accordingly, because complete diversity of citizenship exists between Busby and the two real parties in interest, Capital One and Prensky, this action satisfies the diversity of citizenship requirement of 28 U.S.C. § 1332.

**b.  The amount in controversy exceeds $75,000.**

Busby also argues that the Court should remand her action because Capital One has failed to establish the amount in controversy prong of 28 U.S.C. § 1332.  First, Busby appears to argue that Capital One's Notice of Removal was defective because it failed to set forth the underlying facts supporting its assertion that the amount in controversy exceeds $75,000.  *See* Pl's Mem. at 13.  For reasons already stated *supra*, Part II.A.1, to the extent Busby is arguing that the Notice of Removal was procedurally inadequate, Busby has waived such challenge by failing to assert this objection within thirty days of the filing of the notice of removal.  But more to the point, a

plain read of Capital One's Notice of Removal reveals that Capital One has, in fact, pled satisfaction of the jurisdictional threshold.  *See* Notice of Removal, ECF No. [1] at ¶ 28.[9]

Of course, procedural defects concerning a notice of removal must be distinguished from a meritorious challenge to a federal court's lack of subject matter jurisdiction which, as previously noted, requires mandatory remand at all times prior to final judgment.  28 U.S.C. § 1447(c); *Philip Morris*, 287 F.3d at 196.  Here, Busby argues that as a factual matter, Capital One has not – and cannot – show that the amount in controversy in her case exceeds $75,000.  Pl.'s Mem. at 16-17.

Busby does not demand a specific monetary figure in her complaint; she instead requests damages pursuant to her common law claims, the statutory claims, and declaratory and injunctive relief.  *See* Am. Compl. ¶ 1; *id*. at 42.  If a complaint fails to specify the amount in controversy, a court may independently determine whether that amount meets jurisdictional requirements.  *Wilson v. U.S. Dep't of Transp.*, 759 F. Supp. 2d 55, 64 (D.D.C. 2011).  As a general matter, the amount in controversy in declaratory relief or injunction cases is measured by the value of the object of the litigation.  *Hunt v. Wash. State. Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) (citing cases).  In assessing whether a complaint meets the jurisdictional threshold, courts look to either the value of the right the plaintiff seeks to enforce or the cost to the defendants to remedy the alleged denial of that right.  *Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978) (internal citations omitted).

---

[9] In her opening brief, Busby fixates on a typographical error in the relevant paragraph in the Notice of Removal to argue, by way of a three-page grammar tutorial, that the "fragment" failed to "express a complete thought" and therefore Capital One "neglected to write down its theory" regarding the amount in controversy.  *See* Pl.'s Mem. at 13-16.  Suffice it to say that the Court considers Busby's argument meritless, disingenuous, and frankly, a waste of the Court and the parties' time and resources.

Notably, Judge Urbina applied these principles in a well-reasoned opinion denying a similar request to remand asserted by Busby in *Busby I*, holding as follows:

> In cases in which the plaintiff seeks to rescind a loan or prevent foreclosure, the amount in controversy is equal to the amount of the loan. *Davis v. World Savings Bank, FSB*, [869 F. Supp. 2d 159, 165 (D.D.C. 2011)]; *see also Hancock v. HomEq Servicing Corp.*, 526 F.3d 785, 785 n.2 (D.C. Cir. 2008); *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1028 (N.D. Cal. 2010). Here, the plaintiff seeks rescission of the transaction underlying her $207,000 Note and Mortgage, and she asks the court to "permanently enjoin Defendants . . . from foreclosing on the Note." Am. Compl. at 11. The plaintiff's complaint includes an attached copy of the Deed of Trust, which confirms that the plaintiff's original Note evidenced a debt of $207,000. See Am. Compl., Ex. B. (Deed of Trust). Because the plaintiff's complaint and the materials attached thereto make clear that the plaintiff's action challenges a legal instrument valued at $207,000, the court concludes that the amount-in-controversy requirement is satisfied and subject-matter jurisdiction exists. Accordingly, the court denies the plaintiff's motion to remand.

*Busby v. Capital One, N.A.*, 841 F. Supp. 2d 49, 54 (D.D.C. 2012).  Because here, Busby once again requests the Court to "permanently enjoin Capital One, Prensky, their agents, successors or assigns, from foreclosing on the Note," Am. Compl. at 42, ¶ 6, and again attaches to her Amended Complaint a copy of the same Deed of Trust, documenting a debt in the amount of $207,000, *see* Am. Compl., Ex. B, the Court is satisfied that the jurisdictional threshold is met. *See also, e.g.*, *Duma v. J.P. Morgan Chase*, 828 F. Supp. 2d 83 (D.D.C. 2011) (district court possessed diversity jurisdiction over action seeking to quiet title on property following alleged unlawful foreclosure, notwithstanding the fact that the plaintiff sought only $40,000 in her complaint, because the outstanding balance on the loan secured by the subject property exceeded $500,000), *aff'd on other grounds*, No. 11-7147, 2012 WL 1450548 (D.C. Cir. April 20, 2012), *reh'g en banc denied* (Sept. 5, 2012).  While Busby argues that the value of a temporary delay in foreclosure – not the value of the note – is a more appropriate measure of the "object of the litigation" in this case, she cites no cases within this district to support this approach.

For all of the foregoing reasons, Busby's motion to remand is denied. Capital One's notice of removal was procedurally proper, and this Court has subject matter jurisdiction because the real parties at interest are completely diverse, and the amount in controversy exceeds $75,000.

## B.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss on the grounds that the complaint "fail[s] to state a claim upon which relief can be granted."  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED .R. CIV. P. (8)(a), "in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (citation omitted).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663.

In evaluating a Rule 12(b)(6) motion to dismiss, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,"

or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties]." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted). The court must view the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.,* 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States,* 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). While the court must construe the complaint in the plaintiff's favor, it "need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994). Moreover, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted)*; accord Taylor v. FDIC,* 132 F.3d 753, 762 (D.C. Cir. 1997). While *pro se* complaints are held to a less stringent standard than complaints drafted by counsel, *Moore v. Motz*, 437 F. Supp. 2d 88, 90 (D.D.C. 2006) (citations omitted), "[e]ven a *pro se* plaintiff's inferences . . . need not be accepted if such inferences are unsupported by the facts set out in the complaint." *Id*. (citations and internal quotation marks omitted). "A *pro se* complaint, like any other, must state a claim upon which relief can be granted by the court." *Id*. (citing *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

In her Amended Complaint, Busby asserts eleven counts,[10] including: declaratory relief toward the Recorder; fraud and intentional misrepresentation; conspiracy to commit fraud;

---

[10] In their briefs, both parties have operated under the understanding that District of Columbia law governs Busby's common law claims. *See generally* Capital One's Mem.; Pl.'s Opp'n. Where, as here, "all parties assume that District of Columbia law controls," "[t]he Court need not

wrongful attempted foreclosure; violation of the D.C. Usury Statute, D.C. Code § 28-3312, and the CPPA, D.C. Code § 28-3904; conversion, civil conspiracy; negligence; unconscionability, bad faith and unfair dealing; emotional distress; breach of fiduciary duties; and a request for a permanent injunction against Capital One and Prensky. *See generally* Am. Compl.  Aside from the first count for declaratory relief, which is asserted only against the Recorder, and the D.C. Usury Statute claim, which is asserted only against Capital One, each claim is asserted against both Prensky and Capital One.  *Id.*

Capital One has moved pursuant to Rule 12(b)(6) to dismiss all claims asserted against it. The Court shall address each claim below but pauses to make two preliminary observations about the parties' arguments and the scope of the Court's consideration thereof.

*First*, at the center of Busby's Amended Complaint is an allegation that Capital One is not the holder of the Note and therefore had no authority to commence a foreclosure, appoint a substitute trustee, collect payments, or take any other action in connection with the Deed of Trust. *See generally* Am. Compl.  Busby roots this charge in the alleged facts that there was no recordation of the transfer of the Deed of Trust from B.F. Saul to any other entity, that inconsistent representations had been made to her by Capital One representatives and Prensky, and that Capital One has failed to produce to her documentary proof of its status.  *See* Am. Compl. ¶¶ 94-193.

Capital One contends that because it did, in fact, have the requisite authority to collect payments and foreclose, all of Busby's claims are without merit and the entirety of Busby's Complaint should be dismissed with prejudice as a result.  *See* Capital One's Mem. at 14; Capital One's Reply at 3-4.  On a motion to dismiss, however, the Court cannot dismiss Busby's claims

---

… question the parties' assumptions on that point." *Davis v. Grant Park Nursing Home LP*, 639 F. Supp. 2d 60, 65 (D.D.C. 2009).

based on bare assertions of counsel that it had authority to collect payments and foreclose.  This is particularly true where Capital One's own briefing is inconsistent in this regard.  Capital One requests the Court to consider the face of the Note, which reveals that it was assigned by B.F. Saul to Chevy Chase Bank, F.S.B. ("Chevy Chase") and that Chevy Chase subsequently conveyed the Note with an endorsement in blank.  *See* Capital One's Mem., Ex. A (Note).  Capital One's opening brief, somewhat cryptically, represents that in February 2009, upon Capital One Financial Corporation's merger with Chevy Chase, Chevy Chase's rights and obligations *as servicer* were transferred to Capital One, as successor by merger.  Capital One's Mem. at 4 & n.3.  The opening brief also suggests that, because District law authorizes a Note holder "or its agent" to give notice of a foreclosure sale, Capital One *may* have had "the authority to conduct *Fannie Mae*'s legal affairs relating to servicing Busby's loan."  *Id*. at 14 (citing D.C. Code § 42-815(b) (2011).  Not until its reply brief does Capital One represent that "it has repeatedly advised [Busby] that Capital one possesses the original Deed and the original Note, which has been endorsed in blank, making Capital One the holder of the Note."  Capital One's Reply at 3 (citing D.C. Code § 28:3-205(b) ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.")).

Capital One argues, therefore, that the Court need not accept Busby's allegation that Capital One is not the Note holder because this allegation is contradicted by the judicially noticeable fact that Capital One is in possession of the Note, which it attached to its submissions as an exhibit.  *Id*.  Capital One is mistaken.  First, the Court declines to consider this argument raised for the first time in a reply brief.  *See, e.g., Am. Wildlands v. Kempthorne,* 530 F.3d 991, 1001 (D.C.Cir.2008) ("We need not consider this argument because plaintiffs ... raised it for the

first time in their reply brief."); *McBride v. Merrell Dow & Pharm.,* 800 F.2d 1208, 1211 (D.C.Cir.1986) ("Considering an argument advanced for the first time in a reply brief ... is not only unfair to an appellee, but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered.") (internal citation omitted).  Second, while it is true that a Court may consider documents, such as the Note, "upon which the plaintiff's complaint necessarily relies even if the document is not produced by the plaintiff," *see Hinton*, 624 F. Supp. 2d at 46, Capital One has pointed to no authority suggesting that the unsworn representation of the fact that Capital One *possesses* the document is subject to judicial notice.  The Court is especially disinclined to credit such representation in light of Capital One's equivocal briefing on the issue.

*Second*, Capital One points the Court's attention to the fact that Busby admitted in her complaint in *Busby I* that, before any of the alleged fraud occurred, she had fallen three months behind on her payments.  *See* Capital One's Mem. at 11-12.  Capital One argues these missed payments caused her to default under the terms of the loan and that therefore Busby's allegations regarding the allegedly unauthorized overpayments are directly contradicted by the Note and Deed of Trust, which specifically allow for the imposition of the fees incurred, including the escrow charges, in the event of default.  *Id.*  Accordingly, Capital One contends repeatedly that Busby herself is responsible for any alleged injury suffered in connection with the enforcement of the Note.  *See generally* Capital One's Mem.; Capital One's Reply.

To the extent Busby has in fact strategically omitted allegations regarding missed payments from the Amended Complaint presently before the Court, the Court reminds Busby about her obligations to be none other than forthcoming in her representations to the Court. *See* FED. R. CIV. P. 11(b).  However, as Busby argues, and Capital One concedes, on a motion to dismiss, allegations pled by a plaintiff in a prior proceeding should not be accepted as true or

read into the complaint actually before the court.  *See* Pl.'s Opp'n at 8; Capital One's Reply at 4,

n.3; *see also Howard v. Gutierrez*, 474 F. Supp. 2d 41, 52 n.5 (D.D.C. 2007).  In any event, the

Court would be hard-pressed to conclusively hold, on the inadequate record before it, that three

missed payments entitled the Note holder to impose the (unspecified) amount of fees purportedly

charged and to invoke the power of sale.

In summary, in considering each claim, the Court shall – giving Busby the benefit of all

inferences that can be derived from the facts alleged as is required on a Rule 12(b)(6) analysis –

disregard any arguments by Capital One regarding Busby's alleged default or its purported

authority to collect payments, impose fees, or invoke the power of sale.

## 1. Fraud & Intentional Misrepresentation (Count II)

"Under District of Columbia law, an allegation of fraud must include the following

essential elements: "(1) a false representation, (2) concerning a material fact, (3) made with

knowledge of its falsity, (4) with the intent to deceive, and (5) upon which reliance is placed."

*Acosta Orellana v. CropLife Intern*, 711 F. Supp. 2d 81, 96 (D.D.C. 2010) (citing *In re Estate of*

*McKenney*, 953 A.2d 336, 341 (D.C. 2008)).  To prevail on such a claim, "the plaintiff must also

have suffered some injury as a consequence of his reliance on the misrepresentation."  *Chedick v.*

*Nash*, 151 F.3d 1077, 1081 (D.C. Cir. 1998) (citation omitted).  Importantly, "[f]raud is never

presumed and must be particularly pleaded … [The pleader] must allege such facts as will reveal

the existence of all the requisite elements of fraud."  *Bennett v. Kiggins*, 377 A.2d 57, 59-60

(D.C. 1977).

Furthermore, "[a] complaint alleging fraud must also 'meet the requirements of Rule 9(b)

of the Federal Rules of Civil Procedure.'"  *Acosta Orellana*, 711 F. Supp. 2d at 96.  Rule 9(b)

requires that a party alleging fraud "must state with particularity the circumstances constituting

[the] fraud." FED. R. CIV. P. 9(b).  In this Circuit, the circumstances that the claimant must plead

with particularity include matters such as the "time, place, and content of the false

misrepresentations, the fact misrepresented and what was retained or given up as a consequence

of the fraud," as well as the "identi[ty] [of the] individuals allegedly involved in the fraud."

*United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir.

2004) (citations omitted).  "Unless a complaint pleads with particularity a defendant's alleged

fraudulent representations, the plaintiff will not be permitted to maintain the claim.  This

requirement is imposed because to permit a fraud claim to go forth on less specific allegations

would permit 'the discovery of unknown wrongs,' which Rule 9(b) seeks to prevent." *Acosta*

*Orellana*, 711 F. Supp. 2d at 96 (internal editing and citations omitted).  *See also Williams* (D.C.

Cir. 2004) (The heightened pleading standard for fraud "discourage[s] the initiation of suits

brought solely for their nuisance value, and safeguards potential defendants from frivolous

accusations of moral turpitude.").  Furthermore, "because 'fraud' encompasses a wide variety of

activities, the requirements of Rule 9(b) guarantee all defendants sufficient information to allow

for preparation of a response." *Id.*

Preliminarily, the Court observes that Busby's forty-two page, 395-paragraph-long

Amended Complaint is repetitious, replete with conclusory assertions devoid of factual content,

and as such is far from a model of clarity.  Based upon the Court's careful review of Busby's

allegations, and construing the Amended Complaint generously, Busby appears to allege three

substantively distinct factual misrepresentations by Capital One.  First, Busby alleges that

Capital One executed and filed a fraudulent Notice of Foreclosure Sale (which Busby alleges

misrepresented that Capital One was the holder of the Note and misrepresented the amounts

owed by Busby) and a fraudulent Deed of Appointment[11] (which Busby alleges misrepresented that Prensky was authorized to act as a trustee on behalf of the note holder in foreclosure proceedings).  *See* Am. Compl. ¶ 94-193.  Second, Busby alleges that, during several telephone conversations from as early as September 2009 through April 2010, Capital One represented to Busby that it was the lender, knowing that it was not the lender and intending to deceive and induce Busby into making payments to it. Am. Compl. ¶ 66-67, 209-211.  Third, Busby alleges that Capital One made misrepresentations regarding the amounts owed by Busby by misapplying her mortgage payments toward wrongfully inflated escrow charges and by accelerating amounts added into the balance of her mortgage.  Am. Compl. ¶ 199.

In *Busby I*, the Court considered – and dismissed without prejudice – substantively similar allegations, on the grounds that Busby had failed to plead that she took any steps in reasonable reliance on the Capital One's allegedly fraudulent statements.  *See Busby*, 772 F. Supp. 2d at 276-77.  Judge Urbina reasoned as follows:

> The plaintiff first suggests that the reliance element needed to establish her fraud claim is satisfied by her allegation that the D.C. Recorder of Deeds and other third parties relied on the misrepresentations made in the Notice and Deed of Appointment. . . . Yet under D.C. law, "[a] plaintiff may recover for a defendant's fraudulent statement only if *the plaintiff* took some action in reliance on that statement." *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 22–23 (D.C. Cir. 2008) . . . Thus, the plaintiff's allegations concerning actions taken by the D.C. Recorder of Deeds or any other third parties cannot, standing alone, satisfy the detrimental reliance element required for fraud claims under D.C. law.

> The plaintiff also contends that she relied to her detriment on the defendants' fraudulent statements by consulting legal counsel. Pl.'s Opp'n at 17. This allegation, however, does not appear in the amended complaint. . . [and] even if this allegation were considered part of the plaintiff's pleadings, it has not been pled with the requisite specificity, as the plaintiff has offered no indication of what steps she took to consult

---

[11]  Busby also alleges that on June 4, 2010, Prensky filed a second deed of appointment of substitute trustee, dated May 20, 2010, which likewise falsely represents Capital One as the note holder and as having the authority to appoint a trustee under the Deed of Trust. Am Compl. ¶¶ 175-77.

with legal counsel or what costs she incurred as a result. … Finally, even if the plaintiff had alleged that she had offered some factual allegation to substantiate her claim of loss, it is far from clear that the cost of legal services can constitute detrimental reliance for purposes of fraud, given the American Rule against fee shifting. *See Oliver T. Carr Co. v. United Tech. Commc'ns Co.*, 604 A.2d 881, 883 (D.C. 1992) ("[T]his jurisdiction follows 'the American Rule under which ... every party to a case shoulders its own attorneys' fees, and recovers from other litigants only in the presence of statutory authority, a contractual arrangement, or certain narrowly-defined common law exceptions' such as the conventional 'bad faith' exception." (internal quotation marks omitted) (quoting *Dalo v. Kivitz*, 596 A.2d 35, 37, 39 (D.C.1991))); *see also Sloan v. Urban Title Servs., Inc.,* 689 F.Supp.2d 94, 121 (D.D.C.2010) (holding that a party asserting fraud "must provide legal authority in support of his apparent claim that he is entitled to attorney's fees and costs"). Accordingly, the plaintiff's assertion in her opposition that she consulted legal counsel as a result of the defendants' fraudulent representations does not satisfy the detrimental reliance requirement.

*Id.* at 276.

Judge Urbina also considered – and rejected as inadequately pled – Busby's allegations that Capital One committed fraud by misrepresenting the escrow amounts owed and other penalties due because, in addition to Busby's failure to plead with the requisite specificity, "the amended complaint indicate[d] that after the defendants filed the Notice and Deed of Appointment, which contained the allegedly fraudulent statements at issue, the plaintiff did not make any additional payments to Capital One." *Id.* at 277. Accordingly, Judge Urbina rejected Busby's argument that she acted in reliance on Capital One's alleged misrepresentations regarding the amounts owed by "pay[ing] some of the amounts demanded" because Busby's purported payments "were made before the defendants' alleged misrepresentations and plainly were not taken in reliance on them." *Id.*

Here, Capital One argues that Busby's allegations of fraud in this action have failed to cure the pleading defects highlighted by the Court in *Busby I*. Upon a scrupulous review of the Busby's Amended Complaint, this Court agrees that Busby has again insufficiently pled that Capital One committed fraud. Regarding Busby's allegations relating to the issuance and filing

of the Notice of Foreclosure Sale and Deed of Appointment, it remains the case that her only allegations of reliance on the allegedly fraudulent documents concern actions taken by third parties (specifically, the acceptance for public filing of the documents by the Recorder; the posting of the property by an auctioneer on its website; and the consideration of purchase of the property by "members of the public," *see* Am. Compl.¶¶ 222-23, 225-27), and her vaguely alleged payment of fees in connection with her consultation of legal counsel and commencement of litigation to stop the foreclosure (albeit again without any reference to the timing or amounts of the payments or specific steps to consult counsel), *see* Am. Compl. ¶ 224.  Accordingly, for the same reasons articulated in Judge Urbina's well-reasoned opinion in *Busby I*, and because Busby has not here supplemented her Amended Complaint with any facts – none –  sufficient to cure the previous deficiencies, the Court finds that Busby's Amended Complaint fails entirely to plead that she relied, in any way, on the allegedly fraudulent Notice of Foreclosure Sale and Deed of Appointment to her detriment and has therefore failed to plead fraud on the basis of the issuance or public filing of those documents.

Turning to Busby's allegations regarding the allegedly fraudulent misrepresentations made by Capital One relating to payments made by Busby, the Amended Complaint has made some – albeit ultimately still woefully insufficient – clarifications in this regard.   As aforementioned, the mainstay of Judge Urbina's analysis of these allegations was that Busby did not, and could not, have pled detrimental reliance on Capital One's misstatements regarding its status as lender and amounts owed because those alleged misstatements were made in connection with the issuance of the Notice of Foreclosure Sale and because Busby had clearly alleged that all payments she had made occurred *before* the filing of the Notice of Sale.  *See Busby*, 772 F. Supp. 2d at 277.  However, in the Amended Complaint before this Court, Busby alleges that

during several telephone conversations beginning as early as September 2009 and through April 2010, Capital One told her that it was the lender; that based on those representations, Busby made payments to Capital One, believing that she was making payments under the Note; and that Capital One made those representations knowing that it was not the lender, intending to deceive and induce Busby into making payments to it. Am Compl. ¶¶ 66-67; 209-211. Relatedly, Busby alleges that she later discovered that the amounts she had been paying as of September 2009 had been misapplied to "unauthorized, overstated, [and] improper" escrow fees; essentially, she alleges that she was "tricked into paying more than the amounts actually due and owing" to Capital One, an entity that was not entitled to the payments. Am. Compl. ¶¶ 68-69; 76-79; 217-220.

While Busby's pleading has arguably resolved the sequencing predicament observed by Judge Urbina, in that the timing of events alleged here makes it *conceivable* that Busby, acting subsequent to and in reliance on Capital One's representations, made overpayments to the wrong entity, Busby has nevertheless failed to "allege more by way of factual content to 'nudge' her claim … across the line from conceivable to plausible" as required by the Supreme Court's construction of Rule 8, *Iqbal*, 556 U.S. at 683 (citing *Twombly*, 550 U.S. at 570). *See also Busby*, 772 F. Supp. 2d 268, 285 (It is "not enough for the plaintiff to assert that there could be a set of facts consistent with her pleadings that would entitle her to relief. . . . Rather, the plaintiff must plead sufficient factual content to allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citing *Iqbal*, 129 S. Ct. at 1949)). And she has certainly not satisfied the more demanding pleading standard of Rule 9(b), which requires her to plead the "who, what, when, where, and how" concerning the circumstances of the alleged fraud. *See Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D.D.C. 2004) (internal citations

omitted).   Busby's claim is essentially that during several telephone conversations, spanning a period of several months, sometime after September 2009, "Capital One" "represented" to Busby that it was the lender, and that Busby, at unspecified points in time, made unspecified amounts of payments, which she later learned were "unauthorized, overstated, improper, and not owed." Busby has failed entirely to allege specific conversations, the identity of the individual(s) who made the statements, what exactly was said, how payment amounts were communicated to her and what those amounts were, how or why the alleged statements and amounts were erroneous, or any circumstances surrounding her payments to Capital One.   Most fatally, she has failed to even plead the dates or amounts of the payments "retained [by Capital One] or given up [by her] as a consequence of the fraud." *See Williams*, 389 F.3d at 1256.   Nor does she at any point allege that the payments she made were not credited to her loan in some way, or that there is any other party who, as true lender, was entitled to those payments. What is more, although Judge Urbina did not rely exclusively on similar pleading deficiencies in his dismissal order in *Busby I*, Busby was specifically placed on notice that without them, a fraud claim could not succeed.   *See Busby*, 772 F. Supp. 2d at 277 n.4 ("Furthermore, the amended complaint contains no indication of why the escrow charges and other penalty fees assessed by Capital One were erroneous. … The absence of such allegations renders the plaintiff's fraud claim deficient under Rule 9(b). *See Skypala v. Mortg. Elec. Registration Sys., Inc.*, 655 F.Supp.2d 451, 458 (D.N.J. 2009) (concluding that the plaintiff failed to state a fraud claim based on allegedly unwarranted "Late Charges" and other charges demanded by the defendant because the plaintiff had offered no explanation for its assertion that these charges were unwarranted)").

For all of the foregoing reasons, the Court finds that Busby's failure to plead her fraud and intentional misrepresentation claim against Capital One with sufficient specificity warrants

dismissal of that claim.  Further, the Court notes that Busby has amended her claims in both this action and in *Busby I*, giving her four opportunities to assert a colorable claim of fraud, has failed to heed Judge Urbina's detailed guidance regarding pleading her claims with the requisite particularity, and has not here requested another opportunity to amend.  Accordingly, because Busby "has had the opportunity to cure any deficiencies [in her Amended Complaint] but either has not or cannot do so," the Court shall dismiss her fraud and intentional claim against Capital One with prejudice.  *Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 205-206.

### 2. Conspiracy to Commit Fraud (Count III) & Civil Conspiracy (Count VII)

Busby alleges that Capital One is liable for conspiracy to commit fraud and civil conspiracy.  Simply stated, Busby alleges that Capital One conspired with Prensky to create fraudulent documents and record them with the Recorder.  *See* Am. Compl. ¶¶ 238-256, 307-349.  Preliminarily, the Court observes that there is no independent action in the District of Columbia for civil conspiracy; rather, it is a means for establishing vicarious liability for an underlying tort.  *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.3d 724, 738 (D.C. 2000).  Here, because both of Busby's conspiracy counts are premised on allegedly fraudulent conduct, and because Busby has failed to plead the circumstances constituting the underlying alleged fraud with particularity, *see supra* Part II.B.1, the Court would be hard-pressed to find that Busby has adequately pled a conspiracy to commit fraud.  *See, e.g. Carter v. Bank of Am., N.A.*, 888 F. Supp. 2d 1, 25 (D.D.C. 2012) ("Since the plaintiff has failed to state a claim for common law fraud, as discussed *supra*, her claim for conspiracy to commit fraud cannot stand alone and is thus also unavailing."); *Geir v. Conway, Homer & Chin-Caplan, P.C.*, --- F. Supp. 2d ---, Civ. A. No. 12-1171, 2013 WL 471663, *16 (D.D.C. Feb. 8, 2013) (applying Rule 9(b)'s heightened pleading standard to a civil conspiracy to commit fraud claim).  But even without

applying the requirements of Rule 9(b), the Court finds that because Busby has failed to satisfy even the pleading standard of Rule 8(a), her conspiracy claims must be dismissed.

In order to state a claim for conspiracy under District of Columbia law, Busby must allege, "(1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) injury caused by an unlawful overt act performed by one of the parties to the agreement, and in furtherance of the common scheme." *Busby I*, 772 F. Supp. 2d at 278 (citing *Hill v. Medlantic Health Care Grp.*, 933 A.2d 314 (D.C. 2007)).   Here, even if Busby had sufficiently pled the underlying unlawful act of fraud – which she has not – Busby has failed entirely to allege facts supporting an agreement between two parties.  Busby's only factual allegation of an agreement is that both Prensky's and Capital One's names appear on the allegedly fraudulent documents, and thereafter they were filed with the Recorder, which means, according to Busby, that the parties worked together to create the documents. Am. Compl. ¶ 240. But conclusory allegations of an agreement do not suffice; parties must allege facts showing the existence or establishment of an agreement. *See, e.g., Kissi v. Panzer*, 664 F. Supp. 2d 120, 126 (D.D.C. 2009); *Graves v. United States,* 961 F. Supp. 314, 320 (D.D.C. 1997).   Therefore, because Busby has failed to state a claim for civil conspiracy, the Court dismisses Counts III and VII.   Further, because Busby asserted nearly identical claims for conspiracy to commit fraud in *Busby I*, which were rejected by Judge Urbina as inadequately pled for the same reasons the Court rejects the claims today, *see Busby*, 772 F. Supp. 2d at 277-78, Counts III and VII shall be dismissed with prejudice.[12]

---

[12] Indeed, Capital One has suggested that Busby has merely attempted to peddle her failed RICO claim from *Busby I* as a civil conspiracy claim in this action.  Capital One's Mem. at 25, n.11. Upon a comparison of the two complaints, it does appear that Busby has merely cut-and-pasted the entirety of her RICO allegations from *Busby I* into her Amended Complaint and simply retitled the count.  *See* Am. Compl. ¶¶ 307-349.

### 3.  Wrongful Attempted Foreclosure (Count IV)

Busby also alleges that Capital One attempted to wrongfully foreclose on her property. Am. Compl. ¶ 257-62.  "The District of Columbia courts have held that 'an action for wrongful or improper foreclosure may lie where the property owner sustains damages by reason of a foreclosure executed in a manner contrary to law.'" *Jackson v. ASA Holdings*, 751 F. Supp. 2d 91, 100-101 (D.D.C. 2010) (Kollar-Kotelly, J.) (quoting *Johnson v. Fairfax Vill. Condo. IV Unit Owners Ass'n*, 641 A.2d 495, 505 (D.C. 1994)).  However, there is no dispute here that no foreclosure has taken place, and in fact, Busby herself alleges that the foreclosure sale that was originally scheduled for May of 2010 – almost three years ago – had been cancelled.  Am. Compl. ¶ 173.  Busby has not cited a single authority demonstrating that the District of Columbia courts recognize a common law cause of action for wrongful *attempted* foreclosure, and this Court has found none.[13]  *Cf. Young v. 1st Am. Fin. Servs.*, 992 F. Supp. 440, 445 (D.D.C. 1998) ("[A] claim of wrongful foreclosure is premature at this point because defendants … have not yet transferred title to plaintiffs' home, so there is not yet a foreclosure sale to set aside.").

Busby alleges that, pursuant to District of Columbia law – and specifically, an October 27, 2010 enforcement statement issued by the Attorney General for the District of Columbia – Capital One was obligated to confirm that the District's land records demonstrated that Capital One was in fact the holder of the Note before so indicating in the Notice of Foreclosure Sale. *See* Am. Compl. ¶¶ 260-61 & Ex. A (Statement of Enforcement Intent Regarding Deceptive Foreclosure Sale Notices).  However, Busby has provided no authority or argument to suggest

---

[13] Busby's reliance on *Osbourne v. Capital City Mortgage Corp.* is misplaced.  667 A.2d 1321 (D.C. 1995).  Although *Osbourne* provided for the possibility of damages in connection with a foreclosure that had been commenced but ultimately postponed by agreement of the parties pending the outcome of the lawsuit, this was in the context of a claim of intentional misrepresentation; the court did not suggest the availability of a free-standing tort for wrongful attempted foreclosure.  *Id.*

that the Attorney General's enforcement statement creates a private right of action, and cases in this District in fact suggest that it does not. *See, e.g.*, *Carter*, 888 F. Supp. 2d at 15 (dismissing the plaintiff's claim that the defendant violated District of Columbia law by failing to prove its status as a holder of the instrument or its entitlement to enforce the instrument where the plaintiff had not pled sufficient factual allegations to demonstrate either that she had sustained damages or that there was a foreclosure executed contrary to the law); *Henok v. Chase Home Finance*, --- F. Supp. 2d ---, Civ. A. No. 12-336, 2013 WL 167941, *7 (D.D.C. Jan. 16, 2013) (granting the defendant's motion to dismiss a claim under D.C. Code § 47-1431(a), which obliges all transferees of real property to record a fully acknowledged copy of the deed with the Recorder within 30 days after the transfer, because the plaintiff did "not carr[y] his burden of showing that there is a private right of action for damages under this statute.") (citation omitted).

Accordingly, because Busby has failed entirely to show that the District of Columbia recognizes a claim for wrongful attempted foreclosure, the court will dismiss Count IV, with prejudice, for failure to state a cause of action within the Court's subject matter jurisdiction.

### 4. D.C. Usury Statute and the D.C. Consumer Protection Procedures Act (Count V)

Busby also claims that Capital One violated the D.C. Usury Statute, D.C. Code § 28-3312, "by both misrepresenting material facts and failing to state material facts," and "misapplying payments toward fraudulent and inflated escrow accounts," Am. Compl. ¶ 267, and that it violated the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3904, by those same allegedly fraudulently misapplied payments. Am. Compl. ¶ 275. These same claims were considered and, for good reason, rejected in *Busby I. See Busby*, 772 F. Supp. 2d at 278.

Specifically, Judge Urbina dismissed Busby's claims regarding the D.C. Usury Statute because, although the statute applies to "lenders," all of Busby's claims were premised on the theory that Capital One was not in fact the lender for this loan transaction. *See id.* Nothing has changed in this case, as the Amended Complaint repeatedly asserts that Capital One is not, and never was, the lender, *see, e.g.*, Am. Compl. ¶¶ 47-48; 211, 264. Indeed, Busby's fraud claim is premised entirely on the assertion that Capital One misrepresented itself as the lender and/or the holder of the Note. *See supra* Part II.B.1. Busby has attempted to cure her claim by alleging that "even though Capital One is not the Lender … in its ordinary course of business, it acts as a lender," Am. Compl. ¶ 264; however, Busby previously asserted a similar argument in her briefs in *Busby I*, in response to which Judge Urbina cautioned Busby to provide some "authority [or] cogent argument" in support of this assertion. *Busby*, 772 F. Supp. 2d 279. She has failed to do so. *See* Pl.'s Opp'n at 22-24; *see also, e.g.*, *Young*, 992 F. Supp. at 444 n.7 ("Plaintiffs allege that 1st American fraudulently led them to believe that 1st American was the lender rather than the broker, and that 1st American should therefore be liable under the usury statute. While such misrepresentations, if they were made, may be relevant to the fraud counts, they do not change the fact that the usury statute applies only to lenders, and that 1st American was not a lender in this transaction.") (internal citation omitted). Accordingly, because Busby has, once again, failed to plead facts supporting that Capital One, *as lender*, made a material misrepresentation to her, or that the D.C. Usury statute otherwise applies to Capital One's conduct, the Court shall dismiss with prejudice this claim against Capital One.

Busby also alleges that Capital One violated the CPPA, which prohibits merchants from making material misrepresentations to consumers; however, as Judge Urbina held previously, and as this Court finds today, Busby has alleged no facts establishing that the CPPA applies to

this case.  "The CPPA prohibits a wide variety of deceptive trade practices perpetrated against consumers." *Busby*, 772 F. Supp. 2d at 279 (citing D.C. Code § 28–3904).  "The practices prohibited by the statute include misrepresenting the existence of a sponsorship or affiliation, misrepresenting a material fact which has the tendency to mislead and failing to state a material fact which has the tendency to mislead.  The purpose of the CPPA is to protect consumers from a broad spectrum of unscrupulous practices by merchants, therefore the statute should be read broadly to assure that the purposes are carried out."  *Id.* (citations omitted).  Despite its broad reach, however, "the CPPA applies only to consumer-merchant relationships." *Id.* (citing cases).

The statute itself defines a "consumer" as "a person who does or would purchase, lease (from), or receive consumer goods or services . . .  or a person who does or would provide the economic demand for a trade practice."  D.C. Code § 28–3901(a)(2).  A "merchant" is defined as an "individual, firm, corporation, partnership, cooperative, associations, or any other organization, legal entity, or group of individuals however organized" who "in the ordinary course of business does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services" or who "does or would supply the goods or services which are or would be the subject matter of a trade practice."  *Id.* § 28–3901(a)(3).

Here, Busby's Amended Complaint contains no factual allegations indicating the existence of a consumer-merchant relationship between Busby and Capital One.  *See generally* Am. Compl.  To be sure, courts have applied the CPPA to lenders' practices in connection with residential mortgage transactions.  *See, e.g. Williams v. First Gov't Mort. & Invest. Corp*, 225 F.3d 738, 744 (D.C. Cir. 2000) (upholding jury verdict that home refinancing lender violated CPPA by making loan to debtor whom the lender either knew would be unable to repay or by taking advantage of debtor's inability to protect his own interests during negotiations); *Hughes v.*

*Abell*, 794 F. Supp. 2d 1, 8 (D.D.C. 2010) (denying motion to dismiss CPPA claim where the plaintiff alleged that the lender knew that the terms of the loan required payments equal to almost half of his income).  However, here, the Amended Complaint contains no such allegations of predatory lending by Capital One.  To the contrary, as discussed at length above, Busby has specifically alleged that Capital One was not the lender, and has never been, the lender.  *See generally* Am. Compl.

Accordingly, as Busby has failed to cure the defects in her prior complaint and has ultimately failed to state a claim under the CPPA, the court dismisses Busby's CPPA claim against Capital One, with prejudice.

### 5.  Conversion (Count VI)

In the District of Columbia, conversion "has generally been defined as any unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of [her] rights thereto."  *Chase Manhattan Bank v. Burden*, 489 A.2d 494, 495 (D.C. 1985); *accord O'Callaghan v. Dist. of Columbia*, 741 F. Supp. 273, 279 (D.D.C. 1990).  Importantly, "[w]here there has been no dispossession of property rights, there can be no action for conversion."  *Kaempe v. Myers*, 367 F.3d 958, 964 (D.C. Cir. 2004).

Here Busby's conversion count asserts two acts of conversion – only one of which was considered, and dismissed, in *Busby I*.  First, Busby asserts that Capital One unlawfully asserted ownership interests in the Note and Deed of Trust through the execution of the allegedly fraudulent Notice of Sale and Deed of Appointment.  Am. Compl. ¶¶ 301-306.  Essentially, Busby argues that when she conveyed legal title to the trustee in the Deed of Trust, she maintained a "beneficial" interest in both the property and the Deed of Trust.  *See* Pl.'s Opp'n at 30-33.  Judge Urbina easily rejected this theory in *Busby I*, explaining that "The Deed of Trust is

a security instrument given by the plaintiff for the benefit of the lender … The authorities relied on by the plaintiff stand only for the proposition that the mortgagor has a beneficial interest in the underlying property securing the transaction, not in the deed of trust itself." *Busby*, 772 F. Supp. 2d at 280 (citing *Democratic Cent. Comm. of Dist. of Columbia v. Wash. Metro. Area Transit Comm'n*, 21 F.3d 1145, 1153 (D.C.Cir.1994)).   Further, Judge Urbina observed that, while it is true that courts in other jurisdictions have permitted conversion claims to proceed based on the mortgagor's refusal to return a deed of trust to the mortgagee after fully satisfying his or her loan obligations, because Busby did not (and here, still has not) alleged full satisfaction of her debt, she was not entitled to return of either the Note or the Deed of Trust under the terms of either document.   *Id*. at 280-81 (citing cases).   Because Busby's allegations regarding the alleged conversion of the Note, Deed of Trust, and property are in every material respect the same as those before Judge Urbina, and because the Court agrees with Judge Urbina's well-reasoned rationale summarized above, the Court finds that Busby has failed to state a claim for conversion of the Note, Deed of Trust, or property.

However, Busby has supplemented her conversion allegations in one noticeable way. Unlike in *Busby I*, Busby now avers that Capital One converted her property when it "misapplied her mortgage payments," which Busby believed were going toward principle and interest, "and instead, directed them toward overly inflated escrow charges."   Am. Compl. ¶¶ 288.   Busby also alleges that Capital One lacked authority to divert the funds (or to even collect them in the first instance) and that Capital One failed to redirect the payments to payment of the Note after Busby alerted them to the errors.   *See* Am. Compl. ¶¶ 63-79.

Capital One's only argument in response to these allegations is that "because Busby was in default, Capital One was authorized to apply her payments as necessary, pursuant to the Note

and Deed Trust's default provisions."   Capital One's Mem. at 18.   This given, Capital One argues, nothing in the Amended Complaint supports the allegation that Capital One's actions were an unlawful exercise of control.   *Id.*   In her opposition brief, Busby argues that the Court should disregard this argument in the context of its ruling on Capital One's motion to dismiss because it directly contradicts facts alleged in her Amended Complaint.   Pl.'s Opp'n at 29-30. The Court agrees.   For reasons discussed at length above, *see supra* Part II.B., the Court has determined that Capital One's repeated arguments regarding Busby's alleged default or Capital One's purported authority to collect payments are supported by neither Busby's Amended Complaint nor any of its exhibits or other documents upon which it necessarily relies – or by anything else in the record, for that matter, whether properly considered on a motion to dismiss or not.

In its reply, Capital One neglected entirely to respond to Busby's argument regarding its improper reliance upon her purported "default" in the context of her conversion claim, instead focusing exclusively on arguments relating to the inadequacy of her claim insofar as it asserted conversion of the Deed of Trust.   *See* Capital One's Opp'n at 16-18.   Because Capital One has failed to offer any other arguments as to why Busby has failed to plead conversion of her loan payments, and because the Amended Complaint itself contains sufficient factual allegations that, if accepted as true, state a claim that Capital One – without lawful authority under the terms of the loan's governing documents – exercised "ownership, dominion, or control" over Busby's loan payments, "in denial or repudiation of [her] right" to have such payments directed towards payment of the Note, the Court finds that Busby has adequately pled conversion of her loan

payments. *Burden*, 489 A.2d at 495.[14]  While the Court notes that Busby has failed to plead any details regarding the timing or amounts of the alleged payments made, or how, exactly, they were erroneously misapplied, the Court also notes that, unlike fraud, a common law conversion claim mandates no special pleading standard.  Although the Amended Complaint would certainly be stronger with such detail, the absence thereof does not show a failure to comply with Rule 8 of the Federal Rules of Civil Procedure and cannot support a dismissal under Rule 12(b)(6).

For the foregoing reasons, the Court shall GRANT Capital One's motion to dismiss Count VI, insofar as the count is premised upon alleged conversion of the Deed of Trust. However, the Court shall DENY Capital One's motion to dismiss Count VI, insofar as the count is premised upon alleged conversion of Busby's loan payments, as the Court finds that Busby has sufficiently stated a claim upon which relief may be granted in this regard.  Finally, because Busby has pled the conversion claim against Prensky only insofar as he was allegedly involved in the conversion of the Deed of Trust, and has not alleged that Prensky was involved with collecting or misappropriating her loan payments, the Court shall dismiss the entirety of Busby's conversion claim against Prensky.

### 6.  Negligence (Count VIII)

The elements of a common law claim for negligence in the District of Columbia are "(1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty by the defendant, and (3) damage to the plaintiff, proximately caused by the breach of duty." *Powell v. Dist. of*

---

[14] While it is true that, as a general principle, a cause of action for conversion may not be maintained to enforce a mere contractual obligation for payment of money, money can be the subject matter of a conversion claim if the plaintiff has a right to an identifiable fund or funds of money. *Cf. Curaflex Health Servs., Inc. v. Bruni*, 877 F. Supp. 30, 33 (D.D.C. 1995). Because here, Busby alleges conversion of all funds which she intended to be applied to the Note, but which Capital One allegedly misdirected, and because Busby in fact disclaims the existence of any contractual relationship with Capital One, a conversion claim is not unfitting. *See The Cuneo Law Group, P.C. v. Joseph*, 669 F. Supp. 2d 99, 124 (D.D.C. 2009).

*Columbia*, 634 A.3d 403, 406 (D.C. 1993). "Whether a duty exists is a question of law for the Court." *Findlay v. CitiMortgage, Inc.*, 813 F. Supp. 2d 108, 120 (D.D.C. 2011) (citing *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011)). "Making this determination is 'essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred.'" *Id.* (citing *Hedgepeth*, 22 A.3d at 793).

While, as aforementioned, Busby's Amended Complaint is far from a picture of clarity, Busby appears to allege that Capital One acted negligently in: recording false documents with the Recorder (and thereby causing her public embarrassment by causing the listing of her property as in foreclosure on a public website); concealing the identity of the Note holder; forging the Deed of Substitution (thereby causing transfer of title of the property to Prensky); failing to communicate accurate information to Busby about the relationship of Capital One and Prensky to the Note; failing to communicate accurate information about the amounts due and owing from Busby; overcharging Busby for escrow, improper foreclosure related fees, and other items; and failing to train its employees regarding amounts due and owing for escrow payments under security instruments. Am. Compl. ¶¶ 350-368.

Preliminarily, the Court observes that the alleged conduct pled as part of Busby's negligence claim is, in large part, not negligence at all but rather a reassertion of the alleged *intentional* misrepresentation, which, for the reasons stated *supra* Part II.B.1, requires dismissal. Insofar as the count can be fairly (indeed generously) read as premised upon Capital One's allegedly *negligent* failure to confirm the authenticity of documents filed with the Recorder, to communicate accurate information about Busby's payments and Capital One's status in relation to the Note, and/or to train and monitor its employees, the claim must nevertheless fail due to

Busby's failure to allege any facts which would support the finding of a duty of care.  Although Busby conclusorily alleges that Capital One "had duties, fiduciary and otherwise" to her, *id*. ¶ 352, the Amended Complaint states no facts supporting the existence of a fiduciary or any other relationship which might give rise to a duty of care.  *See generally id*. Busby does not allege – and in fact expressly disclaims – any debtor-creditor or even loan servicing relationship, *see id*. ¶¶ 45-65 (although the Court observes that, even if she had, subject to narrow exceptions not here applicable, "the relationship between a debtor and creditor is ordinarily a contractual one, lacking any fiduciary duties." *Findlay*, 813 F. Supp. 2d at 120); *see e.g.*, *Henok*, 2013 WL 167941 at *5 (denying the plaintiff leave to amend his complaint to add a negligence claim against his lender relating to misrepresentations in a notice of foreclosure sale because the plaintiff did "not allege any facts to establish any duty independent of the contractual relationship created by the mortgage documents, or facts separable from the terms of those documents upon which the torts may independently rest")).  In fact, Busby has failed to allege any relationship at all with Capital One beyond their "tricking" her into thinking they were her lender and submitting payments to them.  *See, e.g.*, Am. Compl. ¶ 63 ("Although Capital One collected payments from Plaintiff, upon information and belief, Capital One has not been authorized by any entity having authority to provide such authorization under the [Note].").  Busby's argument in her opposition brief that "[o]nce Capital One chose to interact with [her], it had a duty of care to her" is simply too vague and devoid of legal support.  Pl.'s Opp'n at 37.

Further, the Court notes that even if Busby had sufficiently alleged that Capital One owed her a duty of care – which she has not – and that Capital One negligently misrepresented information regarding her mortgage loan, Busby has, for the very same reasons discussed at length *supra* Part II.B.1, in the context of Capital One's allegedly fraudulent misrepresentations,

failed to plead that she acted in reliance on those negligent misrepresentations to her detriment. *See Henok*, 2013 WL 167941 at *5 (noting that among the elements of negligent misrepresentation under D.C. law is that "the plaintiff reasonably relied on the false information to [her] detriment").  Indeed, Judge Urbina, in dismissing Busby's comparable negligence claim in *Busby I*, likewise found that Busby had not pled that she had made payments to Capital One in reliance on its alleged misrepresentations, nor provided any indication as to how Capital One's employees improperly assessed escrow charges or any other fees against Busby.  772 F. Supp. 2d 283.  Accordingly, Judge Urbina concluded that Busby had failed to show that Capital One's allegedly negligent misrepresentations or negligent supervision proximately caused her harm. Because Busby has added nothing of substance to the Amended Complaint presently before the Court, the Court shall dismiss her negligence claims against Capital One, with prejudice.

### 7.  Unconscionability, Bad Faith, and Unfair Dealing (Count IX)

On this count, Busby alleges that Capital One used its "superior position as a financial institution . . . to take oppressive and unfair advantage of [her]" by filing the allegedly fraudulent documents. Am Compl. ¶ 370.  However, as the Court previously made unambiguously clear in *Busby I*, claims of unconsciounability, bad faith and unfair dealing require the existence of a contractual relationship between the parties.  *See Busby I*, 772 F. Supp. 2d at 284 (citing *Williams v. First Gov. Mortg. & Investors Corp.*, 225 F.3d 738, 748 (D.C. Cir. 2000) ("Liability for common law unconscionability requires two findings: 'an absence of meaningful choice on the part of one of the parties *together with contract terms which are unreasonably favorable to the other party*.") (citation omitted and emphasis added); *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 627 (D.C. 1997) (concluding that because the plaintiff, "as an employee at will, not under contract," had no basis for claiming that the defendant breached the implied

covenant of good faith and fair dealing); *Brown v. Countrywide Home Loans, Inc.*, 319 B.R. 278, 290 (D.D.C. 2004) (granting summary judgment to the defendant on the plaintiff's claim that the defendant breached the implied covenant of good faith and fair dealing because "no reasonable fact-finder could determine that a contract existed between [the parties]"); *Choharis v. State Farm Fire & Casualty Co.*, 961 A.2d 1080, 1089 (D.C. 2008) (concluding that D.C. law does not recognize an independent tort of bad faith)).

Once again, Busby's Amended Complaint nowhere alleges the existence of a contractual relationship – neither express nor implied – with Capital One.  Accordingly, Count IX must be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### 8. Emotional Distress (Count X)

Busby also claims "emotional distress" based on Capital One and Prensky's "extreme and outrageous" conduct, which the Court understands from her pleading to be an attempt to assert a claim of the tort of intentional infliction of emotional distress.  *See* Am. Compl. ¶¶ 377-385. Under District of Columbia law, the tort of intentional infliction of emotional distress requires (1) "extreme and outrageous conduct" by the defendant that (2) "intentionally or recklessly" (3) causes the plaintiff "severe emotional distress." *Kotsch v. District of Columbia*, 924 A.2d 1040, 1045 (D.C. 2007) (internal quotation marks omitted). The plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *District of Columbia v. Tulin*, 994 A.2d 788, 800 (D.C. 2010) (internal quotation marks and citations omitted).  Deciding whether the plaintiff's allegations are sufficient to meet this demanding standard is, in the first instance, a question for the court. *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998), *amended by* 720 A.2d 1152 (D.C. 1998).

In *Busby I*, Judge Urbina found that although Busby's complaint in that action did not specify the precise conduct on which Busby grounded her claim, the conduct alleged in the complaint generally, which stemmed from the parties' disagreements over their rights and obligations in a commercial loan transaction, was not sufficiently "atrocious" to support an intentional infliction of emotional distress claim." 772 F. Supp. 2d at 285-86 (citation omitted). The Court agrees.  Although here, Busby has pled with slightly more detail in that she has specified that Capital One caused her severe emotional distress by causing her home to be "wrongful[ly] publish[ed] … on the internet" (presumably by way of the public filing of the Notice of Sale), Am. Compl.¶ 380, and by misrepresenting itself as the lender, Am. Compl. ¶ 381, this conduct – whether considered separately or together with all other allegations contained in the Amended Complaint – could not plausibly constitute conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency[.]" *Tulin*, 994 A.2d at 800. *See e.g.*, *Haynes v. Navy Fed. Credit Union*, 825 F. Supp. 2d 285, 294 (D.D.C. 2011) (concluding that allegations that the defendant had called plaintiff's home on "numerous occasions," had "falsely reported to credit agencies that he is in arrears on his loan," had "refused to provide him with an Interest Statement," and may at some point in the future "initiate foreclosure proceedings," whether considered together or independently, failed to state a claim for intentional infliction of emotional distress) (internal editing omitted); *Ihebereme v. Capital One, N.A.*, 730 F. Supp. 2d 40, 54-55 (D.D.C. 2010) (finding that plaintiff's allegations that defendant refused to accept mortgage payments, failed to timely credit mortgage payments, overcharged plaintiff, and discriminated against plaintiff were not sufficiently outrageous to give rise to intentional infliction of emotional distress claims).

Because Busby has again failed to state a claim for intentional infliction of emotional distress, this count shall be dismissed with prejudice.

**9. Request for a Permanent Injunction Against Capital One & Prensky (Count XII)**

Finally, Busby requests that the Court order the following injunctive relief against both Capital One and Prensky: permanently enjoin them from foreclosing on the Note; permanently enjoin them from engaging in the unlawful practices alleged in the Amended Complaint; enter a declaratory judgment that the transactions resulting from those unlawful practices are void; and order rescission of the transactions resulting from their unlawful practices. *See* Am. Compl. at 42. The only substantive claims against Capital One and Prensky surviving the Court's Opinion today are conversion (insofar as it is asserted against Capital One in connection with Capital One's alleged collection and misappropriation of Busby's loan payments) and breach of fiduciary duty (which Busby has asserted only against Prensky, whom she has not yet served in this action). To the extent Busby prevails on her conversion claim, she would be remedied by a return of her funds, not any form of injunctive relief. Because the Court finds today that the other claims against Capital One and Prensky must be dismissed with prejudice, Busby's claims for declaratory and injunctive relief in connection with those claims must also fail. *See, e.g.*, *Am. Immig. Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38, 62 (D.D.C. 1998) ("Given that plaintiffs are not entitled to any relief on their substantive claims because they fail to state a claim under Rule 12(b)(6), it follows that their final claim requesting a declaratory judgment is dismissed as well."). Further, because, as Busby herself acknowledges, the previously scheduled foreclosure sale was cancelled almost three years ago, there exists nothing, at this time, for the Court to enjoin even if the Court were to find Capital One without authority to invoke the power of sale provision under the Deed of Trust. *See, e.g.*, *Wilson v. ABN AMRO Mortg. Group*, Civ. A. No.

48

05-0042, 2005 WL 3275849, at *3 (D.D.C. 2005) (denying injunction when no foreclosure was scheduled or threatened); *accord Carter*, 888 F. Supp. 2d at 153 (cause of action for declaratory relief under District of Columbia foreclosure law accrues with the filing of a notice of foreclosure sale) (citing *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 322 (D.C. 2008)).

## III. CONCLUSION

For the reasons stated herein, the Busby's Motion to Remand Case is DENIED and Capital One's Motion to Dismiss is GRANTED-IN-PART and DENIED-IN-PART. Specifically, the following claims are dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6): fraud and intentional misrepresentation (Count II); conspiracy to commit fraud (Count III); wrongful attempted foreclosure (Count IV); violation of the District of Columbia Interest Rate Ceiling Amendment Act ("D.C. Usury Statute"), D.C. Code § 28-3312, and the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3904 (Count V); civil conspiracy (Count VII); negligence (Count VIII); unconscionability, bad faith, and unfair dealing (Count IX); and emotional distress (Count X). Because all of the pleading deficiencies discussed in this Memorandum Opinion afflict the claims insofar as they are asserted against both Capital One and Prensky, the Court shall dismiss these claims in their entirety. *See Baker*, 916 F.2d at 727. Further, because Busby was previously warned about these deficiencies in connection with prior litigation before Judge Urbina and has not requested leave to amend in this action, the Court shall dismiss these claims with prejudice. *See generally Busby*, 772 F. Supp. 2d 268. Finally, because Busby has failed to demonstrate her entitlement to declaratory or injunctive relief against Capital One or Prensky, the Court shall dismiss those claims.

However, because the Court concludes that Busby has adequately – albeit barely – pled conversion (Count VI), the Court shall deny Capital One's motion insofar as it seeks dismissal of that claim.  Accordingly, the only remaining claims in this action include conversion (Count VI), and claims asserted against the other two defendants: Busby's request for declaratory and injunctive relief against the Recorder (Count I) and a breach of fiduciary duty claim against Prensky (Count XI).

An appropriate Order accompanies this Memorandum Opinion.

Date: March 25, 2013

_____/s/_____

**COLLEEN KOLLAR-KOTELLY**
United States District Judge